**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| DANYELA SCHONTON, SERGIO LUCIANO SCHONTON, JEHOZADAK SANCHES ALVES PEREIRA, MISSIELI MASON SOUZA, IVONETE MAXIMIANO, JASSON DA SILVA, VINICIOS JORDAO, KWAME BOADI ACHEAMPONG, & DIANE SOUZA HUGUENEY, On behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) ) ) |
| *Plaintiffs,* | ) ) |
| v. | ) ) |
| MPA GRANADA HIGHLANDS LLC & METROPOLITAN PROPERTIES OF AMERICA, INC., | ) ) ) |
| *Defendants.* | ) ) ) ) |

**COMPLAINT AND JURY DEMAND**

JURISDICTION

1.  This civil action is brought by the plaintiff to redress violations of the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, the Civil Rights Act of 1866, 42 U.S.C. §§ 1981, 1982, and Massachusetts General Laws, Chapter 151B § 4.

2.  The plaintiffs and all others similarly situated seek injunctive relief, damages and attorney's fees for violations of plaintiffs' statutory rights to equal housing opportunity.

3.  This court has subject matter jurisdiction of the federal claims asserted in this action under 28 U.S.C. §§ 1331, 1343(a)(4) and 42 U.S.C. § 3613.

PARTIES

4.   The plaintiffs Danyela Schonton and Sergio Luciano Schonton are husband and wife and are residents of the Granada Highlands Apartments located at 224 Kennedy Drive, Apartment 404 in Malden, Massachusetts. Mr. and Mrs. Schonton are originally from Brazil.

5.   The plaintiff Jehozadak Sanches Alves Pereira is the brother of plaintiff Danyela Schonton, and also lives in the unit with the Schontons at 224 Kennedy Drive. Mr. Pereira is originally from Brazil.

6.   The plaintiff Missieli Mason Souza is an individual residing at 252 Kennedy Drive, Apartment 201 in Malden, Massachusetts. Mrs. Souza is originally from Brazil.

7.   The plaintiff Ivonete Maximiano is a former resident of the Granada Highlands Apartments, who resided at 192 Kennedy Drive, Apartment 804 in Malden, Massachusetts until June of 2016. Ms. Maximiano is originally from Brazil.

8.   The plaintiff Jasson da Silva is an individual residing at 192 Kennedy Drive, Apartment 404 in Malden, Massachusetts. Mr. da Silva is originally from Brazil.

9.   The plaintiff Vinicios Jordao is an individual residing at 250 Kennedy Drive, Apartment 501 in Malden, Massachusetts. Mr. Jordao is originally from Brazil.

10. The plaintiff Kwame Boadi Acheampong is a former resident of the Granada Highlands Apartments, who resided at 224 Kennedy Drive, Unit 204 until September of 2016. Mr. Boadi Acheampong is originally from Ghana.

11. The plaintiff Diane Souza Hugueney is an individual residing in Malden, Massachusetts. Ms. Hugueney was denied the opportunity to rent a unit at Granada Highlands Apartments. Ms. Hugueney is originally from Brazil.

12. Defendant MPA Granada Highlands LLC is a limited liability company organized under the laws of the State of Delaware, and registered as a foreign limited liability company with the Corporations Division of the Massachusetts Secretary of State.

13. Defendant Metropolitan Properties of America, Inc. is a corporation organized under the laws of the Commonwealth of Massachusetts.

14. Upon information and belief, MPA Granada Highlands LLC is the owner of record of the Granada Highlands Apartments located on Kennedy Drive in Malden, Massachusetts.

15. Metropolitan Properties of America, Inc. is the property manager for the apartments located at the Granada Highlands.

FACTUAL ALLEGATIONS

16. The Granada Highlands Apartments are a complex of thirteen (13) buildings and nine hundred and nineteen (919) units located at 211 Kennedy Drive in Malden, Massachusetts.

17. Mrs. Schonton and her husband signed a lease and moved in, with their six-year-old son and Mr. Pereira, into the Granada Highlands Apartments on August 8, 2015.

18. At the time that plaintiffs moved into the apartment, Metropolitan Properties of America, Inc. required all adults on the lease to present one (1) form of photo identification, proof of income, and proof of renters' insurance. The Schontons and Mr. Pereira provided their Brazilian passports as proof of their identity and income taxes for income verification. and signed a one-year lease, until August 8, 2016.

19. On May 5, 2016, Mr. Pereira received an e-mail with a renewal letter attached, dated May 3, 2016, from Metropolitan Properties of America stating that after a successful inspection of the unit, the tenants of Unit 404 in Building 224 were invited to renew their lease for another year *(Exhibit 1)*.

20. On June 3, 2016, Mrs. Schonton sent an e-mail to Jacqueline Motta, property manager and agent of Metropolitan Properties of America, Inc., indicating that the plaintiffs wished to renew their lease for another year (*Exhibit 2*). Later that same day, Mr. Pereira received an e-mail notice from Ms. Motta, dated June 1, 2016, indicating that Metropolitan Properties of America, Inc. was going to consider the Schontons and Mr. Pereira as month-to-month tenants at the expiration of their lease. (*Exhibit 3*).

21. On July 1, 2016, Jacqueline Motta e-mailed another notice to Mr. Pereira, again indicating that notwithstanding the Schontons' desire to renew the lease, the lease agreement would expire on August 7, 2016 and that the Schontons and Mr. Pereira would be considered month-to-month tenants (*Exhibit 4*).

22. On July 5, 2016, Mr. Pereira e-mailed Ms. Motta and asked her whether she had received Mrs. Schonton's e-mail that she wished to renew the lease for an additional year (*Exhibit 5*). The following day, July 6, 2016, Ms. Motta confirmed via e-mail that she had received Mrs. Schonton's acceptance of the offer to renew the lease, and stated that she would give them a list of documents needed to "update the file" (*Exhibit 6*)

23. On July 13, 2016, Ms. Motta e-mailed Mr. Pereira with a list of documents Granada was requiring for a lease renewal, which included a new renters' insurance policy, insurance policy for all vehicles registered to the tenants of the unit, all current ID (driver's license, passport, visas, and social security cards), all employment verifications (paystubs, employment letter, or W2's), and building keys (*Exhibit 7*).

24. In the meantime, Mrs. Schonton called Ms. Motta to arrange a time to come to the leasing office to bring the required documents and sign a new lease. The meeting was scheduled for August 8, 2016 at 5:00 pm.

25. On August 8, 2016, Mr. Pereira arrived earlier in the day to Granada's leasing office because his key fob was not working. While he was there, Mr. Pereira spoke to Ms. Motta and confirmed the appointment later in the day to discuss renewing the lease. Ms. Motta informed Mr. Pereira that Granada would not renew the lease unless Mr. Pereira presented proof of citizenship, a green card, or a visa.

26. On August 16, 2016, Ms. Motta e-mailed Mr. Pereira and informed him that Granada would not renew the lease. Ms. Motta further informed Mr. Pereira that he would be considered a month-to-month tenant for three months, and that he would have to vacate the premises at the expiration of those three months (*Exhibit 8*).

27. On September 3, 2015, plaintiff Missieli Souza signed a one-year lease on her apartment in Building 252.

28. On May 2, 2016, Mrs. Souza received an apartment inspection notice from Granada, indicating that lease "renewal process begins with an inspection of your home" (*Exhibit* 9). The inspection of Mrs. Souza's unit was completed on May 5, 2016.

29. On July 1, 2016, Granada Highlands sent Mrs. Souza a 60-day renewal letter inviting her to submit in writing her intention to renew the lease (*Exhibit 10*).

30. Mrs. Souza went to the leasing office in person on August 3, 2016 to discuss the renewal of her lease with Ms. Motta. Mrs. Souza was asked to provide her physical social security card in addition to the driver's license she had already provided.

31. On August 5, 2016, Ms. Motta sent Mrs. Souza an e-mail stating, "After speaking with management, the only [sic] was we are going to be able to renew your lease is if you can provide us with copies of your Social Security Cards. Unfortunately if you cannot my hands are tied and we have to have you out at the end of your lease" (*Exhibit 11*)

32. On August 10, 2016, Ms. Motta sent a follow-up e-mail stating that Mrs. Souza would have to provide "…2 forms of picture ID (driver's license, Passport) and an SSN card" (*Exhibit 12*).

33. On September 15, 2016, Ms. Motta sent an e-mail to Mrs. Souza stating, "You have provided a copy of an unexpired driver's license. That is a valid form of identification. You have not provided a second form of valid identification…I explained to you that you needed to provide an updated form of identification to complete the lease renewal. In response, you stated to me that you were not in the country legally and you have so far not provided any additional form of valid identification…An additional form of identification could include a passport, an individual taxpayer identification number (ITIN), age of majority card, military ID, or other state issued photo ID card" (*Exhibit 13*).

34. Mrs. Souza never said to Ms. Motta, or to anyone else at Granada, that she was in the United States illegally – this was an assumption made by Ms. Motta based on Mrs. Souza's nationality, being from Brazil.

35. Plaintiff Ivonete Maximiano had been a resident at the Granada Highlands Apartments since 2012.

36. In March of 2016, Ms. Maximiano and her husband received an offer from Granada to renew their lease for an additional year, which Ms. Maximiano's husband confirmed in writing that they would like to renew. (*Exhibit 14*)

37. On April 1, 2016, Ms. Maximiano's husband received a notice from Granada instructing him that he would be considered a month-to-month tenant after the expiration of the lease on May 31, 2016, and would be charged an additional fee of $325 per month.

38. In May of 2016, Ms. Maximiano and her husband went to the front office at Granada to discuss their lease renewal with Marissa Cohen, who was the property manager. Ms. Cohen informed Ms. Maximiano that she could not live there without a green card, and that another employee had approved many Brazilian immigrants without documents, but that Ms. Cohen would not approve a lease renewal for Ms. Maximiano.

39. Ms. Cohen told Ms. Maximiano that management at Granada was trying to "change the environment" of Granada to something more upscale. Ms. Maximiano and her husband were forced to move out of their unit in June of 2016. Their unit remains available. *Exhibit 15.*

40. The plaintiff Jasson da Silva has been a resident of the Granada Highlands Apartments since July 2009. In April of 2016, Mr. da Silva requested that Metropolitan Properties of America, Inc. replace the carpet in their unit due to ongoing issues with his father's health. Mr. da Silva's father suffers from terminal cancer, and the old, dirty carpeting in the unit was exacerbating his medical condition.

41. Mr. da Silva was informed by Jacqueline Motta that Granada would not wash the carpet, would not change the carpet, and would not renew his lease.

42. By August of 2016, Mr. da Silva and his family had still been unable to find new living accommodations. Mr. da Silva again asked Ms. Motta to renew the lease, but was refused. Mr. da Silva was given an additional month, until September 30, 2016, to get a new apartment.

43. On September 1, 2016, Mr. da Silva received a phone call from an unknown individual at Granada stating that they would be able to renew his lease.

44. On September 2, 2016, Mr. da Silva e-mailed Ms. Motta and informed her that he had been unable to find a new apartment and wanted to renew the lease. Ms. Motta replied via e-mail that there was no offer to renew the lease. (*Exhibit 16*)

45. On September 11, 2016, Mr. da Silva received a notice requiring him to vacate the premises by September 30, 2016. *See Exhibit 17.*

46. Mr. Vinicios Jordao has lived at the Granada Highlands Apartments since 2010. In December 2015, Mr. Jordao went down the front office to speak to someone about renewing his lease and his parking sticker for another year.

47. Mr. Jordao spoke to Marissa Cohen, who requested his driver's license. Mr. Jordao informed Ms. Cohen he did not have a driver's license. Ms. Cohen berated Mr. Jordao for his lack of driver's license and told him if he did not have a license, she would not renew his lease.

48. On August 1, 2016, Mr. Jordao received a notice of inspection of his unit. The inspection was performed on August 8, 2016 by Ms. Motta. After the inspection, Ms. Motta told Mr. Jordao he had twenty four (24) hours to remove a bird cage containing two (2) birds, and a fish tank from his apartment.

49. Mr. Jordao's lease clearly states he is allowed to have fish and birds in the apartment. *Exhibit 18.*

50. On September 7, 2016, Mr. Jordao received a notice that he was in violation of his lease due to having fish and birds, and that he would be evicted. On that same day, Mr. Jordao received a letter informing him his lease would not be renewed beyond December 31, 2016, and that he was expected to vacate the premises on that day. *See Exhibit 19.*

51. Plaintiff Kwame Boadi Acheampong was a resident of the Granada Highlands Apartments from July 31, 2010 to September 15, 2016. He presented a passport from Ghana when going through the approval process for his apartment.

52. On April 1, 2016, Mr. Boadi received an offer to renew his lease from Granada. (*Exhibit 20*). Mr. Boadi e-mailed Ms. Motta on April 4, 2016 and confirmed his desire to renew the lease.

53. On April 10, 2016, Mr. Boadi received a non-renewal letter from Granada. Granada did not give Mr. Boadi any reason why his lease was not being renewed, and he was forced to move out. *See Exhibit 21.*

54. The plaintiff Diana Souza Hugueney resides in Malden. In May of 2016, Ms. Hugueney contacted Granada looking for a 2-bedroom apartment. She spoke to someone named Sam, who informed her that Granada had 2-bedroom apartments available and scheduled Ms. Hugueney to come see the apartment.

55. Ms. Hugueney arrived at Granada with her minor daughter and a friend who was going to help translate, as Ms. Hugueney is not fluent in English. Ms. Hugueney's friend introduced Ms. Hugueney and her 14-year-old daughter as a Brazilian family looking for a 2-bedroom apartment.

56. Sam asked Ms. Hugueney what she did for a living. Ms. Hugueney replied that she cleans houses.

57. An individual sitting at the desk behind Ms. Hugueney, whom Ms. Hugueney's friend identified as the owner of Granada, said to Sam loudly that Ms. Hugueney could not live there.

58. Ms. Hugueney's friend insisted that they were good people and could afford the rent there. The individual in charge repeated that they could not live there, and asked them to leave.

59. Ms. Hugueney was never shown the apartment, and was not even permitted the opportunity to submit an application or income verification to see if she qualified for an apartment.

60. The defendants collectively instituted and maintained a policy at the Granada Highlands Apartments of requesting proof of citizenship and/or green cards, social security cards, and visas only from individuals of Brazilian nationality.

61. MPA Granada Highlands LLC, through its property management company, Metropolitan Properties of America, Inc., instituted and maintained discriminatory policies that were aimed at evicting Brazilian immigrants from their units, or refusing housing to Brazilian immigrants who applied for a unit on the defendants' property.

62. The defendants' policy of requiring certain identifying documents was not applied equally to all tenants and was enforced only against tenants of Brazilian origin.

63. The defendants' policy also disproportionately impacted individuals of Brazilian and other national origins, precluding them from renting units for which they had already been deemed qualified.

### COUNT I – FAIR HOUSING ACT, 42 U.S.C. § 3601, *et seq.*

64. Plaintiffs restate and incorporate by reference the allegations set forth in paragraphs one (1) through sixty three (63) above, as if set forth here in their entirety.

65. As a proximate result of the actions of the defendants, plaintiffs and all others similarly situated have been denied their rights to equal housing opportunity in violation of 42 U.S.C. § 3601, *et seq.*, Title VIII of the Civil Rights Act of 1968.

### COUNT II – CIVIL RIGHTS ACT, 42 U.S.C. §§ 1981, 1982

66. Plaintiffs restate and incorporate by reference the allegations set forth in paragraphs one (1) through sixty five (65) above, as if set forth here in their entirety.

67. As a proximate result of the actions of the defendants, plaintiffs and all others similarly situated have been denied the same rights to contract as are enjoyed by white persons in violation of 42 U.S.C. §§ 1981, 1982, the Civil Rights Act of 1866.

## COUNT III – MASS. GEN. LAWS, CHAPTER 151B § 4

68. Plaintiffs restate and incorporate by reference the allegations set forth in paragraphs one (1) through sixty seven (67) above, as if set forth here in their entirety.

69. The defendants have denied the plaintiffs and all others similarly situated accommodations based on their national origin, in violation of M.G.L. c. 151B § 4.

## CLASS ALLEGATIONS

70. On information and belief, during relevant periods, the defendants have denied housing to at least forty (40) individuals of Brazilian origin, but potentially many more, and a class action is warranted based on numerosity.

71. Many of the tenants of Brazilian origin were affected by the defendants' policies and practices set forth above. As a result, there are questions of fact and law common to many Brazilian tenants at the Granada Highlands Apartments.

72. Plaintiffs' claims are typical of the claims of all tenants at Granada Highlands Apartments who originally come from Brazil and who presented their passports or other documents identifying themselves as Brazilian.

73. Plaintiffs and their counsel will fairly and adequately represent the interests of the class. Plaintiff has no known conflicts of interest with other class members.

74. The questions of law or fact common to the members of the class predominate over any questions affecting only individual members. The common questions include, among other things, whether defendants' practices for renewal of tenants' leases targeted individuals of Brazilian origin in an effort to rent units to white, non-immigrant individuals.

75. A class action is superior to other available methods for the fair and efficient adjudication of these claims. Among other things, individual adjudications would result in highly inefficient duplication of discovery, briefing of legal issues, and court proceedings.

76. The plaintiffs seek certification of a class of all tenants at Granada Highlands who were denied housing based on their national origin under the pretext of not having proper identification.

WHEREFORE, the plaintiffs request that this Court enter the following relief:

1. Certification of this case as a class or collective action pursuant to M.G.L. c. 151B § 4, 42 U.S.C. §§ 3601, *et seq.*, 42 U.S.C. §§ 1981, 1982, or Fed. R. Civ. P. 23;

2. An order enjoining the defendants from further violating the Fair Housing Act, the Civil Rights Act of 1866, and Massachusetts General Laws on the basis of national origin;

3. An award of damages to which plaintiffs and all class members are entitled;

4. Punitive damages;

5. Attorney's fees, costs, and interest; and

6. Any other relief to which the plaintiffs and all class members may be entitled.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE.**

DANYELA SCHONTON, SERGIO LUCIANO SCHONTON, JEHOZADAK SANCHES ALVES PEREIRA, MISSIELI MASON SOUZA, IVONETE MAXIMIANO, JASSON DA SILVA, VINICIOS JORDAO, KWAME BOADI ACHEAMPONG, & DIANE SOUZA HUGUENEY, on behalf of themselves and all others similarly situated,

By their attorneys,

/s/ Ludovino Gardini
Ludovino Gardini (BBO # 568563)
Erica Petkov (BBO # 681511)
Perez Gardini, LLC
PO Box 205
Somerville, MA 02143
(855) 337-8440
Fax: (866) 520-1233
ludo@gardinilaw.com
erica@gardinilaw.com

Dated: October 24, 2016