## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DANYELA SCHONTON, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MPA GRANADA HIGHLANDS LLC, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No.: 16-cv-12151-DJC<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                    **April 2, 2019**

### I.    Introduction

This is a putative class action in which the Plaintiffs, Brazilian tenants and tenant applicants, allege that Defendants MPA Granada Highlands LLC, Metropolitan Properties of America, Inc., Jeffrey J. Cohen, Marisa V. Cohen, Paula Nigro and Jacqueline Motta (collectively, "Defendants") discriminated against them in violation of the Fair Housing Act, 42 U.S.C. § 3604 (Count I), the Civil Rights Act, 42 U.S.C. §§ 1981, 1982 (Count II) and Mass. Gen. L. c. 151B, § 4(6), (10) (Count III).  All other counts of the amended complaint have been dismissed.  D. 71.  Plaintiffs have moved for class certification under Fed. R. Civ. P. 23(b)(2), (3).  D. 109.  For the reasons stated below, the Court DENIES the motion.

### II.    Burden of Proof and Standard of Review

A class action may be certified only if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims

1

or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed R. Civ. P. 23(a); see In re New Motor Vehicles Canadian Export Antitrust Litig., 522 F.3d 6, 18 (1st Cir. 2008). Where, as here, the putative class has moved to certify the class under Fed. R. Civ. P. 23(b)(3), D. 109 at 3, the Court must also determine whether "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed R. Civ. P. 23(b)(3); see New Motor Vehicles, 522 F.3d at 18. "[T]he district court must undertake a 'rigorous analysis' to determine whether plaintiffs me[e]t the four threshold requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy of representation) and Rule 23(b)(3)'s two additional prerequisites." In re Nexium Antitrust Litig., 777 F.3d 9, 17 (1st Cir. 2015) ("Nexium III")[1] (quoting Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013)).

Plaintiffs also move for class certification under Rule 23(b)(2). D. 109 at 3. To certify the class under Rule 23(b)(2), the Court must determine whether Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); see New Motor Vehicles, 522 F.3d at 12 n.8. This form of class certification "ordinarily is used when broad, class-wide injunctive or declaratory relief is appropriate." McKenna v. First Horizon Home Loan Corp., 475 F.3d 418, 427 (1st Cir. 2007). It "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." Fed. R. Civ. P. 23(b)(2)

---

[1] The Court relies upon two opinions from the Nexium litigation and, for clarity's sake, hereafter refers to them as follows: the district court's opinion certifying the second class (of DPPs), In re Nexium (Esomeprazole) Antitrust Litig., 296 F.R.D. 47 (D. Mass. Dec. 11, 2013) as Nexium II; and the First Circuit's opinion affirming end-payor class certification, Nexium, 777 F.3d 9, as Nexium III.

advisory committee's note to 1966 amendment; see DeRosa v. Mass. Bay Commuter Rail Co., 694 F. Supp. 2d 87, 95 (D. Mass. 2010). The plaintiffs bear the burden of showing that all the prerequisites for class certification have been met. Makuc v. Am. Honda Motor Co., Inc., 835 F.2d 389, 394 (1st Cir. 1987).

### III. Factual Background

Plaintiffs are tenants and tenant applicants of Defendants' apartment complex, Granada Highlands ("Granada"), who allege discrimination based upon their Brazilian national origin between January 1, 2016 and the present. Defendant Granada is a complex of thirteen buildings and approximately nine hundred studio, one, two and three-bedroom apartments located on Kennedy Drive in Malden, Massachusetts. D. 46 ¶ 22. Defendant Metropolitan Properties of America, Inc. ("Metropolitan") is the owner of Granada. Id. ¶ 23. Defendant Jeffrey J. Cohen is the Chief Executive Officer, President and sole director of Metropolitan. Id. ¶ 17. Defendants Marisa V. Cohen, Paula Nigro and Jacqueline Motta are employees, agents or servants of Metropolitan and/or Granada. Id. ¶¶ 18-20.

Seven of the twelve Named Plaintiffs—Danyela Schonton, Sergio Luciano Schonton, Jehozadak Sanches Alves Pereira ("Pereira"), Missieli Mason Souza ("Mason Souza"), Jasson da Silva, Vinicios Jordao ("Jordao") and Leonicio Geraldo Pimenta da Silva ("Leonicio da Silva")— are current, Brazilian residents of Granada. Id. ¶¶ 4-6, 8-9, 14. Plaintiffs allege that Defendants have selectively applied "novel, variable, and contrived qualification requirements" for current Brazilian tenants that are not imposed on Caucasian Americans and have used the requirements "as pretext to deny renewal of annual leases, to impose short term tenancy at higher rents, and/or to order Brazilian tenants to vacate." Id. ¶ 27. These alleged requirements included proof of

citizenship or legal status, id. ¶ 42, multiple, specific forms of identification, id. ¶¶ 50, 69, and pet removal, id. ¶ 76.

Three of the Named Plaintiffs—Ivonete Maximiano ("Maximiano"), Kwame Boadi Acheampong ("Boadi Acheampong") and Luiz Silva ("Silva")—are former Granada residents. Id. ¶¶ 7, 10, 13. Maximiano and Silva are from Brazil and Boadi Acheampong is from Ghana. Id. ¶¶ 7, 10, 13. Plaintiffs allege that similar discriminatory policies involving immigration status and identification were applied to these former residents as to the Plaintiffs who are current residents. Id. ¶¶ 59, 99.

The remaining two Named Plaintiffs—Diane Souza Hugueney ("Hugueney") and Marcelo Ricardo Souza ("Ricardo Souza")—are Brazilian applicants for rental units at Granada. Id. ¶¶ 11, 12. Plaintiffs allege that Defendants have "refused to rent, refused to negotiate for rental, and otherwise made unavailable and denied rental housing" to these Plaintiffs. Id. ¶ 26. As to Hugueney, Plaintiffs allege that she was denied the opportunity to view an apartment at Granada when she arrived for an appointment after she told Granada staff that she and her family were Brazilian and that she cleans houses for a living. Id. ¶¶ 83-87. As to Ricardo Souza, Plaintiffs allege that he was denied an appointment to visit a rental unit at Granada because he was not a citizen and did not have a green card. Id. ¶ 90. Plaintiffs further allege that Ricardo Souza was quoted a higher rental rate in person at Granada than online for unexplained reasons. Id. ¶ 93. Finally, Plaintiffs allege that during a subsequent visit to Granada, Granada management told Ricardo Souza that he would not qualify to rent an apartment because he was an international student. Id. ¶ 94.

## IV.     Procedural History

Plaintiffs initiated this case on October 24, 2016, D. 1, and filed  the operative, amended complaint on July 11, 2017.  D. 46.  Defendants moved to dismiss, D. 55, which the Court granted in part and denied in part, D. 71, leaving Counts I-III as the only remaining counts.  Plaintiffs now have moved to certify the class.  D. 109.  The Court heard the parties on the pending motion and took the matter under advisement.  D. 112.

## V.     Discussion

Plaintiffs move for certification of the proposed class, comprised of:

> [A]ll persons subjected to discrimination on the basis of Brazilian national origin in the leasing of rental housing at the defendants' apartment complex, Granada Highlands, from January 1, 2016 to date – whether they were denied leases, denied renewal or subject to less favorable terms and conditions of occupancy compared to other tenants.

D. 109 at 1.  To have the class certified, Plaintiffs must meet all the requirements under Rule 23(a) and under Rule 23(b)(1), (2) or (3).  See Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997).

### A.     Ascertainability

Before addressing the Rule 23(a) and (b) requirements, the Court must determine if the class is ascertainable.  Although not explicitly mentioned in Rule 23, an implicit prerequisite to class certification is that a "class" exists—that is, it must be "administratively feasible to determine whether a particular individual is a member."  Kent v. SunAmerica Life Ins. Co., 190 F.R.D. 271, 278 (D. Mass. 2000) (citing 7C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1760, 581 (2d ed. 1972)).  A class must be determinable by "stable and objective factors" at the outset of a case, id.; not every class member must be identified, but the class must be sufficiently ascertainable to permit a court to "decide and declare who will receive notice, who

will share in any recovery, and who will be bound by the judgment." Id. (citing Crosby v. Soc. Sec. Admin. of the U.S., 796 F.2d 576, 580 (1st Cir. 1986)). "A class definition that is based on non-specific matters, such as 'wrongful conduct,' or subjective factors, such as 'a reasonable time,' is not objectively ascertainable." Carrier v. Am. Bankers Life Assur. Co. of Fla., Civ. No. 05-cv-430-JD, 2008 WL 312657, at *4 (D.N.H. Feb. 1, 2008) (citing Crosby, 796 F.2d at 580).

Here, the Defendants argue that ascertainability is not met because the proposed class definition is an impermissible "fail safe" class. D. 111 at 2. A fail-safe class is one that is "defined in terms of the legal injury." Nexium III, 777 F.3d at 22; see Messner v. Northshore Univ. HealthSystem, 669 F.3d 802, 825 (explaining that a fail-safe class "is defined so that whether a person qualifies as a member depends on whether the person has a valid claim"). A fail-safe class makes it "virtually impossible for the Defendants to ever 'win' the case," Nexium III, 777 F.3d at 22 n.19, because the class members either "win or, by virtue of losing, they are not in the class, and therefore, not bound by the judgment," Randleman v. Fidelity Nat'l Title Ins. Co., 646 F.3d 347, 352 (6th Cir. 2011). Accordingly, the First Circuit has held that it is "inappropriate[]" to certify a fail-safe class. Nexium III, 777 F.3d at 22.

Plaintiffs' proposed class is a fail-safe class because membership presumes a valid legal claim—namely, suffering discrimination based on Brazilian national origin. Plaintiffs have also failed to identify objective criteria by which Plaintiffs may be deemed part of the class. The only way to determine class membership under Plaintiffs' proposed definition would be to conduct individualized inquiries about each putative class member to see if they suffered discrimination, and if so, whether it was based on Brazilian national origin. Accordingly, the Court concludes that Plaintiffs have failed to make the initial showing of ascertainability. Even if they had succeeded, however, they have also failed to satisfy Rule 23(a) and (b), as discussed below.

## B.    Rule 23(a) Requirements

Even if Plaintiffs had made the threshold showing of ascertainability of the proposed class,

they would still have to prove each of the four elements of Rule 23(a).

### 1.    Numerosity

First, the Court must decide whether "the class is so numerous that joinder of all members

is impracticable." Fed. R. Civ. P. 23(a)(1). "'Impracticability' does not mean 'impossibility,' but

only the difficulty or inconvenience of joining all members of the class." Advert. Specialty Nat'l

Ass'n v. FTC, 238 F.2d 108, 119 (1st Cir. 1956). "No minimum number of plaintiffs is required"

to demonstrate impracticability, "but generally if the named plaintiff demonstrates that the

potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." García-

Rubiera v. Calderón, 570 F.3d 443, 460 (1st Cir. 2009) (quoting Stewart v. Abraham, 275 F.3d

220, 226-27 (3d Cir. 2001)); see In re Relafen Antitrust Litig., 218 F.R.D. 337, 342 (D. Mass.

2003) (noting that "forty individuals [are] generally found to establish numerosity"). The Court

must also take into account such "subjective factors" as the "geographic location of proposed class

members, the nature of the action, and matters of judicial economy." Nexium II, 296 F.R.D. at 52.

Impracticability is a matter of discretion for the Court. See Advert. Specialty, 238 F.2d at 119.

Plaintiffs propose a class "of at least forty (40) individuals of Brazilian origin, but

potentially many more." D. 46 ¶ 135. In addition to the twelve Named Plaintiffs, this number is

buttressed by affidavits of four Brazilians who are not Named Plaintiffs attesting to further

complaints against Defendants. D. 109-4, D. 109-5, D. 109-6, D. 109-7. One of Plaintiffs'

attorneys has also submitted an affidavit attesting that she spoke to eight people who "believe[]

they were subjected to discrimination on the basis of Brazilian national origin in the leasing of

rental housing" by Defendants. D. 109-8 ¶ 4. Plaintiffs further argue that "[t]he numerosity of the

proposed class is demonstrated in part by . . . the surrounding area demographics." D. 109 at 8. Plaintiffs urge the Court to take judicial notice of the thousands of Portuguese-speaking residents of the surrounding areas of Malden, Revere, Everett, Chelsea, Saugus, Melrose and Medford, Massachusetts. Plaintiffs, however, have not alleged that any of these thousands of individuals would qualify as part of the class by having been "subjected to discrimination on the basis of Brazilian national origin in the leasing of rental housing at the defendants' apartment complex, Granada Highlands" as defined in the proposed class definition.

Defendants argue that the supplemental affidavits of the four Brazilians who are not Named Plaintiffs should be stricken because none of these individuals were identified by Plaintiffs prior to the close of the class discovery period. D. 111 at n.11; D. 111-1 ¶ 13. Defendants further argue that Plaintiffs' attorney's declaration, which purports to identify eight additional class members, was submitted after the close of discovery, is hearsay and may not be considered by the Court at this stage. D. 111 at 11-12; D. 111-1 ¶ 13.

The Court concludes that Plaintiffs have failed to demonstrate the numerosity of persons who fit their proposed class definition. At most, Plaintiffs have identified twenty-four specific members of the putative class, while alluding to more potential plaintiffs in the surrounding areas, but with no connection to Granada, as required by their own class definition. Eight of the twenty-four have not submitted any materials in this case and their complaints are reported second-hand by Plaintiff's counsel.

Even assuming Plaintiffs could show numerosity, however, they have failed to prove the other requirements of Rule 23(a).

## 2. Commonality

Second, to proceed as a class action, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Supreme Court has noted that this "language is easy to misread, since [a]ny competently crafted class complaint literally raises common 'questions.' . . . What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common <u>answers</u> apt to drive the resolution of the litigation." <u>Wal-Mart v. Dukes</u>, 564 U.S. 338, 349-50 (2011) (citation omitted) (emphasis in original). Commonality is not satisfied where plaintiffs "merely . . . have all suffered a violation of the same provision of law." <u>Id.</u> at 350. Rather, Plaintiffs' claims "must depend upon a common contention . . . [that] must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." <u>Id.</u>

Here, Plaintiffs assert that commonality is satisfied because "the officially stated policy of requiring two forms of current photo identification was . . . stringently and erratically applied to Brazilians." D. 109 at 4. Defendants counter that Plaintiffs' proposed class is not limited to individuals with a complaint under any specific policy. D. 111 at 11. Rather, Defendants contend, "it includes any Brazilian tenant who suffered national origin discrimination, regardless of the specific facts or the type of injury." <u>Id.</u>

In <u>Dukes</u>, the Supreme Court considered a proposed class of approximately one and a half million current and former female employees of Wal-Mart who alleged that their local supervisors' discretion over pay and promotions discriminated against women in violation of Title VII. <u>Dukes</u>, 564 U.S. at 342. The Court held that the lack of a coherent company policy underlying the alleged

discrimination prevented the plaintiffs from satisfying the commonality requirement under Rule 23(a). <u>Dukes</u>, 564 U.S. at 353. The Court elaborated:

> Conceptually, there is a wide gap between (a) an individual's claim that he has been denied a promotion [or higher pay] on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims.

<u>Id.</u> at 352-53 (alteration in original) (quoting <u>Gen. Tel. Co. of the Southwest v. Falcon</u>, 457 U.S. 147, 157-58 (1982)). The Court concluded that the plaintiffs in <u>Dukes</u> had failed to bridge that conceptual gap. <u>Id.</u> at 353-55.

Plaintiffs argue that here, unlike in <u>Dukes</u>, "plaintiffs allege that they all suffer[ed] the same specific harm—unjustified discrimination in access to rental housing, resulting in loss or denial of leases and occupancy on less favorable terms tha[n] those allowed to non-Brazilians." D. 109 at 4. In attempting to distinguish <u>Dukes</u>, Plaintiffs analogize this case to <u>McReynolds v Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 672 F.3d 482 (7th Cir. 2012). In <u>McReynolds</u>, the plaintiffs alleged that two company policies (a "teaming policy" and an "account distribution policy") had a disparate impact on black brokers in violation of Title VII. <u>Id.</u> at 488. While the case was ongoing, the Supreme Court issued its decision in <u>Dukes</u>, which spurred the plaintiffs to file a renewed motion for class certification. <u>Id.</u> at 487. After analyzing the <u>Dukes</u> decision, the Seventh Circuit concluded that class certification was appropriate in <u>McReynolds</u> because the challenged practices were company-wide, unlike in <u>Dukes</u>, where there were practices that "local managers [could] choose or not at their whim." <u>Id.</u> at 490.

Plaintiffs also rely on <u>Connor B. v. Patrick</u>, 278 F.R.D. 30 (D. Mass. 2012), in attempting to distinguish <u>Dukes</u>. In <u>Connor B.</u>, the court rejected the defendants' motion for decertification where plaintiffs had alleged "specific and overarching systemic deficiencies . . . that place[d]

children at risk of harm." Id. at 34. The deficiencies included "excessive caseloads, an insufficient array of foster family homes, inadequate supervision and monitoring of private providers, an incomplete and unevenly distributed array of services, and inadequate caseworker and supervisor training." Id. at 31. The court found that the "systemic shortcomings," rather than the discretion exercised by individual case workers, formed the basis for the class members' injuries, and that the case therefore presented sharply different circumstances from those of in Dukes. Id. at 34.

The Court finds Plaintiffs' attempts to distinguish this case from Dukes and establish commonality to be unavailing. Unlike McReynolds and Connor B., the Plaintiffs here have not identified a specific policy or policies that have caused Plaintiffs' alleged injuries.[2] The most common allegation relates to the policy requiring two forms of current identification. Of the Named Plaintiffs, however, five (Jordao, Maximiano, Boadi Acheampong, Luiz Silva and Hugueney) were not required to provide two forms of identification. Another Named Plaintiff (Leonicio da Silva) was asked to provide two forms of identification in November 2016, but upon renewing his lease in December 2016 only had to show one form of identification for himself and none for his wife. D. 46 ¶¶ 106, 110. Another common allegation is that Brazilian tenants were discriminated against when Granada demanded proof of citizenship, but only four Named Plaintiffs (Pereira, Maximiano, Luiz Silva and Ricardo Souza) allege to have been asked for proof of citizenship or a green card, id. ¶¶ 40, 59, 90, 99, while one more (Mason Souza) was asked for

---

[2] The McReynolds comparison is also inapt because there the plaintiffs relied on a claim of disparate impact, McReynolds, 672 F.3d at 483, unlike Plaintiffs here, who rely on a theory of disparate treatment, see D. 60 at 9 (stating, in Plaintiffs' memorandum, that Plaintiffs do not raise a theory of disparate impact in the amended complaint and "clearly allege that disparate treatment intentionally created by defendants to restrict Brazilian tenancies in the complex [sic]") (emphasis in original).

a social security card, id. ¶ 48.[3]  Even when grouping those two policies into a general policy of "heightened identification requirements," three of the Named Plaintiffs (Jordao, Boadi Acheampong[4] and Hugueney), were not affected.  Jordao's claims are particularly unique because he complains of being evicted due to having a five-foot birdcage and fish tank in his unit but admits that his pets were in violation of his lease and that he did not receive authorization for the pets, nor remove them after being instructed to do so.  D. 111-1 at 72-77.[5]

Even considering the supplemental affidavits, which Defendants contend is improper, id. at n.11, the Court concludes that Plaintiffs have not established a consistent policy or practice to support commonality under Rule 23(a).  In Plaintiffs' attorney's affidavit describing eight additional allegedly injured individuals, the complaints vary widely.  One of the individuals states only that she "believes her application was denied because of Brazilian national origin," D. 109-8 ¶ 3(a); two claim they were forced to vacate the property in 2015[6] despite valid leases, id. ¶¶ 3(b)-(c); another claims he "provided an acceptable form of income verification" but was denied, id. ¶ 3(d); another applied with "all requested documents"[7] but did not receive a response, id. ¶ 3(e); another alleges he was denied a tour because he did not produce his tax returns, id. ¶ 3(f); and yet another claims she was asked to provide her U.S. passport to renew her lease, id. ¶ 3(h).  Finally, Plaintiffs' attorney describes a current resident at Granada who believes he was discriminated

---

[3] Ricardo Souza alleges to have been asked about a green card, social security number and driver's license.  D. 46 ¶ 90.

[4] Boadi Acheampong is also Ghanaian—not Brazilian.  D. 46 ¶ 10.  Plaintiffs have not explained how he fits into the proposed class of "[a]ll persons subjected to discrimination on the basis of Brazilian national origin . . . ."

[5] Jordao claims a non-Brazilian tenant had a forty-gallon fish tank but does not know if this tenant disclosed the tank to Defendants or if Defendants authorized the tank.  D. 111-1 at 77-78.

[6] The Court notes that these allegations fall outside the class period in this case.

[7] The affidavit does not specify which or how many documents were requested.

against "on the basis of Brazilian national origin," id. ¶ 4, but the only information proffered about him is that he provided one form of identification when he first applied and has not been asked to provide any additional identification documents upon subsequent renewals, id. ¶ 3(g).

Plaintiffs have also offered four other supplemental affidavits in which individuals of Brazilian national origin attest to their own experiences with Defendants. These claims, like the others, vary significantly. Clodoaldo de Souza alleges he was discriminated against because his car was towed three times even though he had a night permit for the Granada parking lot. D. 109-4 ¶ 5.[8] He also alleges that he "was not offered the opportunity to stay or renew the lease" at Granada. Id. ¶ 7.[9] Mario Mota alleges that when he first applied for housing at Granada (outside the class period), he was asked for income verification and copies of his passport and social security card. D. 109-6 ¶¶ 2-3. Two other declarants allege that they were told repeatedly that no units were available to rent, despite receiving third-party information to the contrary. D. 109-5; D. 109-7.

The Court concludes that, like the claims of the Named Plaintiffs, the claims of the additional individuals who submitted supplemental affidavits (and those described by Plaintiffs' counsel in her supplemental affidavit) do not stem from a common pattern or practice by Defendants. And, absent something more, alleging discrimination against a particular race or nationality is insufficient to establish commonality. See Dukes, 564 U.S. at 350; Herrera v. SEIU Local 87, No. CV 10-01888 RS, 2013 WL 1320443, at *3 (N.D. Cal. Apr. 1, 2013) (explaining

---

[8] Defendants have submitted a sworn affidavit attesting that Granada does not provide "night permits" and that Clodoaldo de Souza regularly violated his lease by parking more than one vehicle at Granada. D. 111-2 ¶ 12.

[9] Defendants have also submitted sworn evidence that, rather than being denied the chance to renew his lease, Clodoaldo de Souza provided notice of his intent to vacate his apartment to Defendants approximately two months before his lease expired. D. 111-2 ¶ 14.

that plaintiffs "cannot obtain class certification by merely asserting that the alleged interests and injuries are common to the class and the named plaintiffs simply because they are all Hispanic").

Even if the policies applied to Plaintiffs were not identical, under <u>Dukes</u>, Plaintiffs still could seek class certification by offering "significant proof" that Defendants "operated under a general policy of discrimination." <u>Dukes</u>, 564 U.S. at 353. Plaintiffs, however, like the plaintiffs in <u>Dukes</u>, have failed to do so. Moreover, Defendants have produced uncontroverted evidence that seventeen current Brazilian tenants have had their leases renewed, often multiple times. D. 13 ¶¶ 125-38. Seven Brazilian tenants have also provided sworn affidavits that they have not been subject to discriminatory treatment at Granada. D. 17-23.

For all of these reasons, the Court concludes that the allegations, defenses and evidence relevant to each affected individual will differ significantly, such that Plaintiffs cannot be said to have met their burden to show commonality under Rule 23(a).[10]

  *3. Typicality*

Third, Plaintiffs must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Commonality looks at the relationship among the class members generally, while typicality focuses on the relationship between the proposed class representative and the rest of the class. <u>See</u> 1 William B. Rubenstein, <u>Newberg on Class Actions</u> § 3:26 (5th ed. 2012). "The central inquiry in determining whether a proposed class has 'typicality' is whether the class representatives' claims have the same essential characteristics as the claims of the other members of the class." <u>Barry v. Moran</u>, No. 05-10528-RCL, 2008 WL 7526753 at *11 (D. Mass. Apr. 7, 2008) (quoting <u>McLaughlin v. Liberty Mut. Ins.</u>

---

[10] To the extent Plaintiffs were attempting to amend the proposed class definition further at the motion hearing or rely upon additional, proffered submissions, the Court denies such relief given the untimeliness of same.

Co., 224 F.R.D. 304, 310 (D. Mass. 2004)). In evaluating typicality, the Court seeks to ensure that the "named plaintiff[s], in presenting [their] case, will necessarily present the claims of the absent plaintiffs." Randle v. SpecTran, 129 F.R.D. 386, 391 (D. Mass. 1988) (quoting Priest v. Zayre Corp., 118 F.R.D. 552, 555 (D. Mass. 1985)).

Plaintiffs do not address typicality in their motion papers. Defendants argue that Plaintiffs cannot satisfy their burden under Rule 23(a)(3) for much the same reasons that Plaintiffs failed to show commonality. These overlapping arguments are unsurprising, given that "[t]he commonality and typicality requirements of Rule 23(a) tend to merge" because "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Dukes, 564 U.S. at 349 n.5 (first alteration in original) (quoting Falcon, 457 U.S. at 157-158 n.13). As mentioned above, at least three Named Plaintiffs do not allege to have been subjected to any type of heightened identification requirement, which makes their ability to fairly represent absent class members questionable. One of these Plaintiffs is also not of Brazilian national origin. Based on these differences and those described in more detailed in the section above, the Court concludes that Plaintiffs have failed to meet the typicality requirements to the same extent they have failed to meet those of commonality.

### 4.    *Adequacy of Representation*

Fourth, plaintiffs seeking class certification must show that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This factor requires Plaintiffs to establish an absence of potential conflict and an assurance of vigorous prosecution. See Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985). The class

representatives must be part of the class, possess the same interest and suffer the same injury as class members.  See Amchem, 521 U.S. at 625-26.  "[P]erfect symmetry of interest is not required and not every discrepancy among the interests of class members renders a putative class action untenable."  Matamoros v. Starbucks Corp., 699 F.3d 129, 138 (1st Cir. 2012).  Rather, the inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent," Amchem, 521 U.S. at 625, and focuses on conflicts that are "fundamental to the suit and that go to the heart of the litigation," Matamoros, 699 F.3d at 138 (quoting 1 William B. Rubenstein, Newberg on Class Actions § 3:58 (5th ed. 2012)).  "[S]peculative conflict should be disregarded at the class certification stage."  Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l, Ltd., 247 F.R.D. 253, 265 (D. Mass. 2008) (citation omitted).

The Court must determine "first, whether any potential conflicts exist between the named plaintiffs and the prospective class members, and, second, whether the named plaintiffs and their counsel will prosecute the case vigorously."  Vargas v. Spirit Delivery & Distrib. Servs., 245 F. Supp. 3d 268, 288 (D. Mass. 2017).  Plaintiffs have not addressed either step of the adequacy inquiry in their papers.

As to the adequacy of the Named Plaintiffs as class representatives, Defendants argue that "the record raises serious questions" because during depositions, Plaintiffs admitted that they lack knowledge about the nature of this litigation, do not know that this case is a class action, are not aware of their responsibilities as class representatives and, in some instances, have disavowed the claim that Defendants treated Brazilians uniformly.  D. 111 at 6; see, e.g., D. 111-1 at 34 (Sergio Schonton testifying "To be honest with you, I didn't even know I was representing a class . . . "); Id. at 125-26 (Hugueney testifying "no," she does not know what the term class action means; "no," she is not seeking to represent anyone else in this lawsuit; "no," she does not know what her

responsibilities are in representing a class; and no, "[she] do[esn't] think" all Brazilians at Granada were treated the same); Id. at 23 (Danyela Schonton testifying "[she] do[esn't] know" if this suit is a class action, "do[esn't] know" if she is seeking to represent a class in this case and does not know the responsibilities of a class representative); Id. at 62-63 (Jasson da Silva testifying that he does not know what claims others have submitted in this case and that he is "not sure" if he is seeking to represent a class); Id. at 55 (Maximiano testifying she is not familiar with the term class action and does not know who other members of the class might be); Id. at 138-39 (Marcelo Souza testifying he does not know what a class action is or what his responsibilities are as a class representative).

As to the adequacy of Plaintiffs' counsel, Defendants point out that counsel has failed to provide information about counsel's experience with class actions—something the Court is required to consider under Fed. R. Civ. P. 23(g). Defendants also raise the concern that one of the firms representing Plaintiffs is employing one of the Plaintiffs. D. 111 at 7; D. 111-1 at 9, 13. Payments from class counsel to a class representative are considered "highly irregular, and at the very least create an appearance of impropriety." See, e.g., Maudlin v. Wal-Mart Stores, Inc., No. 1:01-CV-2755-JEC, 2006 WL 739696, at *1 (N.D. Ga. Mar. 21, 2006).

The Court agrees with Defendants that Plaintiffs have not met their burden of demonstrating that Plaintiffs are adequate representatives under Rule 23(a)(4). A Plaintiff must have "sufficient interest, credibility, or either knowledge or an understanding of the case." Monroe v. City of Charlottesville, Va., 579 F.3d 380, 385 (4th Cir. 2009) (citing 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1766 (3d ed. 2005)). Here, Plaintiffs' deposition testimonies belie any potential claim that the Named Plaintiffs understand their responsibilities as class representatives. See Burton v. Chrysler Grp. LLC, Civ. A. No. 8:10-

00209-MGL, 2012 WL 7153877, at *7 (D.S.C. Dec. 21, 2012) (finding adequacy not met where plaintiffs "on the whole, [did] not understand their duties and obligations as class members"); Scott v. N.Y. City Dist. Council of Carpenters Pension Plan, 224 F.R.D. 353, 356 (S.D.N.Y. 2004) (holding that plaintiffs were not adequate where they did not know what a class action was or that their case was such an action). The Court concludes, therefore, that Plaintiffs have failed to show that the Named Plaintiffs they would fairly and adequately represent the proposed class. Having made this finding as to the proposed class representatives, Plaintiffs have failed to show adequacy for the purposes Rule 23(a)(4) and the Court need not reach the further question of the adequacy of counsel.

### C.      Rule 23(b)(2) and Rule 23(b)(3) Requirements

Because Plaintiffs failed to satisfy the requirements of Rule 23(a), class certification is precluded. See Amchem, 521 U.S. at 613; Kress v. CCA of Tenn., LLC, 694 F.3d 890, 893 (7th Cir. 2012). For the sake of thoroughness, however, the Court briefly explains why Plaintiffs have failed to meet the requirements of Rule 23(b)(2) or (3).

### 1.      Rule 23(b)(2)

Under Rule 23(b)(2), Defendants must have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief [would be] appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "[Rule 23(b)(2)] does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." Dukes, 564 U.S. at 360 (emphasis in original). Here, there is no injunction that would provide relief to all putative plaintiffs. For example, some Named Plaintiffs would require an injunction ordering Defendants to reinstate their

old leases, while others would require one ordering Defendants to reinstate their prior leases, while still others would require one ordering Defendants to issue them new leases.

Rule 23(b)(2) also "does not authorize class certification when each class member would be entitled to an individualized award of money damages." Dukes, 564 U.S. at 360-61. As explained in Dukes, "individualized monetary claims belong in Rule 23(b)(3)," because Rule 23(b)(3) contains the additional procedural protections of predominance, superiority, mandatory notice and the right to opt out. Id. at 362. Here, while Plaintiffs seek an injunction, they also seek individualized monetary awards for compensatory and punitive damages. See, e.g., D. 111-1 at 22 (Danyela Schonton testifying she seeks "huge, tremendous" emotional distress damages); D. 111-1 at 31 (Sergio Schonton testifying he seeks "damages to [his] character, moral [and] emotional"). For all of these reasons, certification under Rule 23(b)(2) is inappropriate here.

### 2. *Rule 23(b)(3)*

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and effectively adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In considering predominance, "a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 298 (1st Cir. 2000). In class actions, "common issues do not predominate if the fact of [liability] and [damages] cannot be established through common proof." New Motor Vehicles, 522 F.3d at 20. As compared to the commonality requirement of Rule 23(a), "the predominance criterion is far more demanding." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 624 (1997). Regarding superiority, the Court considers four factors:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).   The superiority inquiry ensures that litigation by class action will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."   Amchem, 521 U.S. at 615 (alteration in original) (quoting advisory committee's note on Fed. R. Civ. P. 23).

Here, Plaintiffs have not met their burden of proving predominance or superiority. Plaintiffs' claims cannot be adjudicated using "common proof," as is required for predominance. As discussed above, because Plaintiffs have failed to identify a common discriminatory practice or policy by Defendants or offer "significant proof" that Defendants "operated under a general policy of discrimination," Dukes, 564 U.S. at 353, each Plaintiff's claim would necessarily require its own evidence at trial.   Resolution of the claims would turn on a host of individualized issues, including whether Defendants knew about each person's Brazilian national origin, whether each individual met Defendants' tenancy requirements outside of the identification policy, whether each individual could meet Defendants' identification policy and whether each individual had committed lease violations, such as having unauthorized pets.   As to superiority, Plaintiffs have not shown that a class action is the superior method for adjudicating this case, particularly given that numerosity, commonality, typicality and adequacy of representation—the foundational requirements for class action litigation—are lacking.

## VI.    Conclusion

For the foregoing reasons, the Court DENIES Plaintiffs' motion for class certification, D. 109.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge