UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
                                    )
DANYELA SCHONTON, et al.,           )
                                    )
            Plaintiffs,             )
                                    )
      v.                            )
                                    )  Case No. 16-cv-12151-DJC
                                    )
MPA GRANADA HIGHLANDS LLC, et al.,  )
                                    )
                                    )
            Defendants.             )
                                    )
                                    )
_____ )

## MEMORANDUM AND ORDER

**CASPER, J.**                                            **March 5, 2020**

### I.     Introduction

Plaintiffs, Brazilian tenants and tenant applicants, allege that Defendants MPA Granada Highlands LLC, Metropolitan Properties of America, Inc., Jeffrey J. Cohen, Marisa V. Cohen, Paula Nigro and Jacqueline Motta (collectively, "Defendants") discriminated against them in violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3604 (Count I), the Civil Rights Act, 42 U.S.C. § 1981 (Count II) and Mass. Gen. L. c. 151B, § 4(6) (Count III), the claims that remain as the other counts of the amended complaint have been dismissed. D. 46; D. 71. Defendants now have moved for summary judgment on the remaining claims. D. 130. At the motion hearing, counsel for Plaintiffs indicated that they are no longer pursuing Counts II and III. For the reasons stated below, the Court ALLOWS the motion for summary judgment as to Count I.

1

## II. Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). The movant "bears the burden of demonstrating the absence of a genuine issue of material fact." Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-moving party may not rest on the allegations or denials in her pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but "must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor," Borges v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010). "As a general rule, that requires the production of evidence that is 'significant[ly] probative.'" Id. (alteration in original) (quoting Anderson, 477 U.S. at 249). "Neither party may rely on conclusory allegations or unsubstantiated denials, but must identify specific facts derived from the pleadings, depositions, answers to interrogatories, admissions and affidavits to demonstrate either the existence or absence of an issue of fact." Magee v. United States, 121 F.3d 1, 3 (1st Cir. 1997). In conducting this inquiry, the Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

## III. Factual Background

The following facts are drawn from Defendants' statement of undisputed material facts, D. 132, Plaintiffs' response to same, D. 138, and other supporting documents and are undisputed unless otherwise noted.

Plaintiffs are current and former tenants and tenant applicants of Defendants' apartment complex, Altitude Apartments, which was formerly known as Granada Highlands ("Granada"), who allege discrimination based upon their Brazilian national origin between January 1, 2016 and the present. See D. 46 ¶¶ 118-22; D. 138 ¶ 1. Defendant Granada is a complex of 919 apartment units in multiple buildings located on Kennedy Drive in Malden, Massachusetts. D. 138 ¶ 1. Defendant MPA Granada Highlands, LLC ("MPA") is the owner of Granada. Id. Defendant Jeffrey J. Cohen is the Founder and Chief Executive Officer of MPA. Id. Defendants Marisa V. Cohen ("Cohen"), Paula Nigro ("Nigro") and Jacqueline Motta ("Motta") are current or former employees, agents or servants of MPA and/or Granada. D. 138 ¶¶ 2-4.

### A. Rental Policies at Granada

Granada has instituted a written policy of requirements to rent units in their buildings (the "Rental Policy"). D. 13-40. The Rental Policy includes a section titled General Rental Screening Criteria (the "General Criteria"). D. 13-40 at 9. The General Criteria states that all applicants must have either a social security card or an Individual Taxpayer Identification Number ("ITIN"). Id. The General Criteria indicates that, if an applicant is unable to provide a social security card or an ITIN, they must produce a visa or an immigrant green card. Id. Pursuant to the General Criteria, applicants must also submit prior rental history, proof of employment and income and must pay applicable fees and deposits, among other requirements. See id. at 9-13.

The Rental Policy states that "foreign-born, non-US citizen [a]pplicants require special processing" and cross-references to a subsection titled "Conditional Approvals." D. 13-40 at 9. The relevant subsection applies to "Foreign Citizen[s], Non Students." D. 13-40 at 14. This provision applies to "only those foreign citizens temporarily working in the US on an approved VISA." Id. The provision requires that those foreign citizens must submit either a social security

3

number or an ITIN as well as a "valid photo passport" along "with their VISA." Id. The policy also indicates that foreign citizens are required to provide proof of income "by an established company." Id. If a foreign applicant has resided in the United States for more than three months, they are required to submit proof of residency. Id.

The Rental Policy also includes a list of specific requirements for all potential tenants. See id. at 18-21. The Rental Policy states that "[e]ach applicant must provide two unexpired forms of identification (a valid driver's license, passport, age of majority card, military ID, or state issued photo ID cards are acceptable)." Id. at 18. The Rental Policy also details income and credit requirements, rental history and employment history requirements. Id. at 18-19. The list of requirements limits the number of occupants that are allowed to reside in each unit and lists the specific required deposits and fees. Id. at 19. Potential tenants are also subject to criminal background checks and are required to obtain rental insurance. Id. at 19-20. Finally, the Rental Policy indicates certain limits on pets per unit. Id. at 20.

Defendants claim that a former employee, Emil Kreymer ("Kreymer"), who worked for Granada for approximately eight months in 2015, regularly did not follow Granada's Rental Policy when leasing to tenants. D. 138 ¶ 19. In fact, certain Plaintiffs have represented that Kreymer did not require them to submit more than one form of identification to lease an apartment at Granada. See D. 138 ¶¶ 42, 62, 124.

**B.     Plaintiffs**

Plaintiff Danyela Schonton ("D. Schonton"), her husband Sergio Luciano Schonton ("S. Schonton," together the "Schontons"), and her brother Jehozadak Sanches Alves Pereira ("Pereira") are current tenants at Granada who have resided at the complex since 2015. D. 138 ¶¶ 41, 43, 64, 81. The Schontons and Pereira were born in Brazil and are undocumented immigrants.

4

D. 138 ¶¶ 35, 56, 75. When initially leasing their apartment at Granada, D. Schonton, S. Schonton and Pereira provided their Brazilian passports. D. 138 ¶¶ 42, 62, 80. Neither of the Schontons nor Pereira have a United States passport, a driver's license, a permanent or temporary resident card or a valid visa. D. 138 ¶¶ 37, 58, 77. Each of them has been issued an ITIN by the Internal Revenue Service. Id. Prior to the expiration of their lease, Motta informed Pereira that each tenant needed to provide additional documents to renew their lease, including an additional form of identification such as a driver's license, United States passport, visa or SSN card. D. 138 ¶ 46. Neither of the Schontons nor Pereira provided the requested documents. See D. 138 ¶ 47. Upon expiration of their lease, the Schontons and Pereira did not move out of the apartment at Granada and have been month-to-month tenants since that time. D. 138 ¶ 51.

Plaintiff Jasson Da Silva ("Da Silva") is a current resident at Granada. D. 138 ¶ 111. Da Silva was born in Brazil and came to the United States in approximately 2001 when he was eleven years old. D. 138 ¶ 87. In 2013, Da Silva was granted Deferred Action for Childhood Arrival ("DACA") status, deferring deportation and allowing him to remain in the United States. D. 138 ¶ 90. Da Silva has a social security card and was granted employment authorization, but does not possess a United States passport, valid visa or a permanent or temporary resident card. D. 138 ¶¶ 91-92. Da Silva submitted his Brazilian passport when initially applying to lease a unit at Granada but did not submit any other identification. D. 138 ¶ 95. Da Silva and his family moved into a unit at Granada in 2009 and their lease was renewed for the next five consecutive years. D. 138 ¶¶ 97-98. In November 2016, Motta informed Da Silva that she would need additional documents to renew his lease, including two forms of identification, which could include a visa, passport or driver's license. D. 138 ¶ 102. Da Silva and his family did not provide the requested documents. D. 138 ¶ 103. Between 2014 and 2016, Da Silva and his family received fifteen

eviction notices due to non-payment of rent and, in June 2016, Da Silva's mother received a cease and desist letter because there was an unauthorized satellite dish installed on the deck of their unit they rented. D. 138 ¶¶ 107-109. Da Silva and his family continue to reside at Granada. D. 138 ¶ 111.

Missieli Mason Souza ("Souza") is a current resident at Granada. D. 138 ¶ 135. Souza is a citizen of Brazil and has been granted DACA status. D. 138 ¶¶ 114-115. After receiving DACA status, Souza was issued a social security card and employment authorization. D. 138 ¶ 116. Souza and her husband initially applied for an apartment at Granada in 2015. D. 138 ¶ 121. At the time, Souza and her husband submitted copies of their driver's licenses, but no other forms of identification. D. 138 ¶ 124. Souza and her husband were granted a one-year lease that expired in September 2016. D. 138 ¶ 128. Just prior to the expiration of their lease, Motta informed Souza and her husband that they needed to provide an additional form of identification to renew their lease. D. 138 ¶ 129. Souza does not possess a United States passport, a valid visa or a permanent or temporary resident card. D. 138 ¶ 118. Souza did not provide the requested second form of identification. D. 138 ¶ 130. Since the expiration of her lease in September 2016, Souza has been living at Granada on a month-to-month basis. D. 138 ¶ 135.

Plaintiff Leoncio Geraldo Pimenta Da Silva ("Pimenta Da Silva") is a current resident at Granada. See D. 138 ¶ 154. Pimenta Da Silva is a Brazilian citizen who first came to the United States on a tourist visa. D. 138 ¶¶ 140-41. Pimenta Da Silva's tourist visa expired in 2006 and he has remained in the United States since the expiration. D. 138 ¶ 141. Pimenta Da Silva and his wife have lived at Granada since 2012. D. 138 ¶ 144. To initially lease their apartment at Granada, Pimenta Da Silva and his wife submitted their Brazilian passports and Brazilian driver's licenses as identification. D. 138 ¶ 147. Pimenta Da Silva's lease was renewed for three consecutive years.

6

D. 138 ¶ 148. In November 2016, prior to the expiration of Pimenta Da Silva's lease, Motta informed him that he and his wife were required to submit additional documents, including two forms of identification. D. 138 ¶ 150. Pimenta Da Silva did not provide the requested documents, but his lease was renewed for an additional year. D. 138 ¶ 152. Pimenta Da Silva and his wife are currently residents at Granada on a month-to-month lease. D. 138 ¶ 154.

Plaintiff Vinicios Jordao ("Jordao") is a former resident at Granada. See D. 138 ¶ 162. Jordao is a Brazilian citizen who has lived in the United States since 2005 as an undocumented immigrant. D. 138 ¶¶ 157-59. Jordao does not have a United States passport, valid visa or a permanent or temporary identification card. D. 138 ¶ 160. Jordao and his wife lived in an apartment at Granada from 2010 through 2016. D. 138 ¶ 162. While a resident at Granada, Jordao's wife was also an undocumented immigrant. D. 138 ¶ 163. At the time they initially applied to lease an apartment, Jordao and his wife submitted only their Brazilian passports as identification. D. 138 ¶ 164. In December 2015, Jordao received a letter notifying him that he had "received a 14[-]day notice [for late payment of rent] every month" he had lived at Granada. D. 138 ¶ 166. During his time at Granada, Jordao submitted multiple checks that bounced due to insufficient funds. D. 138 ¶ 169. Jordao's lease prohibited him from having animals in his apartment, however, he kept a large birdcage and a fish tank in his apartment. D. 138 ¶¶ 170-71. Despite being asked to remove the animals from his unit, Jordao kept the animals for another two months. D. 138 ¶¶ 173-74. In September 2016, Granada notified Jordao that his lease would not be renewed. D. 138 ¶ 175. Jordao did not move out of his apartment when his lease expired but remained in the unit for approximately eight to nine more months before vacating. D. 138 ¶ 178.

Plaintiff Luis Silva ("Silva") is a former resident of Granada and is a Brazilian citizen. D. 138 ¶¶ 184, 202. Silva has lived in the United States since 2006 and is an undocumented

7

immigrant. D. 138 ¶¶ 183, 186. Silva and his wife resided in an apartment at Granada from 2010 through 2016. D. 138 ¶ 188. While living at Granada, Silva's wife was also an undocumented immigrant. D. 138 ¶ 189. When they first applied for an apartment at Granada in 2010, Silva and his wife indicated that they were from Brazil but did not provide any identification. D. 138 ¶¶ 190-91. Silva does not possess a United States passport, visa, driver's license or permanent or temporary resident card. D. 138 ¶ 185. Silva's lease at Granada was renewed every year from 2011 through 2015. D. 138 ¶ 196. While living at Granada, Silva violated his lease by painting a room in the unit without permission. D. 138 ¶ 198. In 2016, Nigro informed Silva that he was required to provide documents evidencing his lawful status to renew his lease. D. 138 ¶ 199. Silva was unable to provide the requested documents. D. 138 ¶ 200. Silva's lease was not renewed and he vacated the apartment at Granada in June 2016. D. 138 ¶ 201.

Plaintiff Ivonette Maximiano ("Maximiano") is a former tenant of Granada. See D. 138 ¶ 226. Maximiano was born in Brazil and came to the United States in 2002. D. 138 ¶¶ 211-12. Maximiano was an undocumented immigrant until she received a visa as the spouse of a United States citizen, Kenneth Bokor ("Bokor"), in 2018. D. 138 ¶¶ 212-13. When submitting the application for a unit at Granada, Maximiano provided a copy of her Brazilian passport. D. 138 ¶ 218. Maximiano, Bokor, and Maximiano's former sister-in-law entered into a lease for a unit at Granada in 2014. D. 138 ¶ 220. While living at Granada, Maximiano and Bokor asked for guest passes more times than allowed under the rental policy. D. 138 ¶¶ 223, 230. Bokor was notified in 2016 that the lease would not be renewed. D. 138 ¶ 225. Defendants state that the lease was not renewed for multiple reasons, including that Bokor informed Granada staff that he would not be living in the unit on a full-time basis, which was required for all tenants such as Bokor whose credit history and income were relied upon to rent the unit, and that staff was concerned

unauthorized individuals were living in the apartment because of the frequency with which Bokor requested additional passes. D. 138 ¶¶ 227, 230.

Plaintiff Diane Souza Hugueney ("Hugueney") is an undocumented immigrant from Brazil who has lived in the United States since 2015. D. 138 ¶ 237. Hugueney has not been issued either a social security number or an ITIN. D. 138 ¶ 238. Hugueney also does not have a United States passport, valid visa, driver's license or permanent or temporary resident card. D. 138 ¶ 239. Sometime around May or June of 2016, Hugueney and her daughter visited Granada to inquire about renting an apartment. D. 138 ¶ 241. Once staff at Granada were informed that Hugueney was employed as a house cleaner, she was told that no units were available for rent. D. 138 ¶ 242.

Plaintiff Marcelo Ricardo Souza ("M.R. Souza") is a Brazilian citizen who obtained an F-2 visa to enter the United States in 2015 because his wife, also a Brazilian citizen, was studying in the United States. D. 138 ¶ 251-52. M.R. Souza does not have a social security card or an ITIN. D. 138 ¶ 253. In February 2017, M.R. Souza submitted an application to rent a unit at Granada that indicated that he was a student, although he was not. D.138 ¶ 257. M.R. Souza's application was not accepted. See D. 138 ¶ 258.

## IV. Procedural History

Plaintiffs filed an amended complaint in this action on July 11, 2017. D. 46. The Court denied in part and granted in part Defendant's motion to dismiss the amended complaint. D. 71. Plaintiffs then filed a motion to certify a class on October 12, 2018, D. 109, which the Court denied. D. 114. Defendants have now moved for summary judgment. D. 130. Defendants have also moved to sever Plaintiffs' claims, D. 117, and to strike portions of Plaintiffs' opposition to the motion for summary judgment, D. 140. The Court heard the parties on the motions and took the matter under advisement. D. 144.

## V. Discussion

### A. Count I – Violation of the Fair Housing Act

Plaintiffs allege that Defendants have violated the FHA, 42 U.S.C. § 3604, by discriminating against them based on national origin because they are from Brazil. See D. 46 ¶¶ 118-22. The FHA states, in part, that it is unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). A plaintiff can prove a FHA claim by showing either disparate treatment or disparate impact. Macone v. Town of Wakefield, 277 F.3d 1, 5 (1st Cir. 2002); see Batista v. Cooperativa de Vivienda Jardines de San Ignacio, 776 F.3d 38, 43 (1st Cir. 2015). Plaintiffs have indicated that they are not bringing a claim based on disparate impact, D. 137 at 5, and, therefore, they must show disparate treatment. To establish a disparate treatment claim "there must be sufficient evidence for a reasonable jury to conclude that the Defendants were motivated by a protected characteristic in performing the challenged conduct." South Middlesex Opportunity Council, Inc. v. Town of Framingham, 752 F. Supp. 2d 85, 96 (D. Mass. 2010) (internal quotation marks omitted). "Summary judgment for the defendant is warranted on a disparate treatment claim 'if the plaintiff cannot produce either (a) direct evidence of discriminatory intent or (b) indirect evidence creating an inference of discriminatory intent.'" Batista, 776 F.3d at 43 (internal citation omitted); see Pina v. Town of Plympton, 529 F. Supp. 2d 151, 155 (D. Mass. 2007).

More often, discrimination is shown through indirect evidence, so the Court turns to that first. On an FHA claim, "[w]hen a plaintiff offers no direct evidence of discrimination, his claim of discrimination under the FHA is to be examined under the burden-shifting framework of McDonnell Douglas Corp. v. Green . . . established in Title VII cases." Pina, 529 F. Supp. 2d

at 155-156 (quoting Caron, 307 F. Supp. 2d at 369).  Pursuant to the framework developed in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), Plaintiffs must initially establish a prima facie case of discrimination by demonstrating that: (1) they are members of a protected class; (2) they applied for, or attempted to apply for, an apartment at Granada and were qualified to receive one; (3) they were denied despite being qualified; and (4) "the defendant approved the same type of [application] for a similarly situated party during a period relatively near the time plaintiff was denied."  See McDonnell Douglas, 411 U.S. at 802; Pina, 529 F. Supp. 2d at 156 (citing Gamble v. City of Escondido, 104 F.3d 300, 305 (9th Cir. 1997)).

   *1.     Plaintiffs Have Failed to Establish a Prima Facie Case*

Plaintiffs meet the first element in that they are of Brazilian national origin, so qualify as members of a protected class under the FHA.  See 42 U.S.C. §3604(b); see Pina, 529 F. Supp. 2d at 156.  Plaintiffs, however, have not satisfied the remaining elements of a prima facie showing.  They have not satisfied the second element because they have failed to demonstrate that they were qualified to obtain or renew a lease at Granada.  D. 131 at 18-19.  Plaintiffs argue that they satisfy the criteria in the Rental Policy for renting a unit at Granada and that the Conditional Approvals are not applicable to them.  D. 137 at 4.  This argument is contradicted by the plain language of the Rental Policy, which cross-references to the Conditional Approvals subsection of the Rental Policy.  D. 13-40 at 9.  Under the Conditional Approvals subsection, there is a provision titled "Foreign Citizen, Non Students," D. 13-40 at 14, which applies to all Plaintiffs as each one was a citizen of Brazil at the time they sought to apply for or renew their lease and none were students.  The Conditional Approvals "applies to only those foreign citizens temporarily working in the US on an approved VISA."  D. 13-40 at 14.  Under this provision, applicants must provide a Social Security Number or Individual Taxpayer Identification Number and a valid photo passport

together with their visa. Id. Based on the Rental Policy, all but one Plaintiff failed to meet the applicable requirements to lease a unit at Granada based on the undisputed fact that they did not have a visa at the time of nonrenewal of their lease or at the time they were denied an opportunity to lease an apartment. See D. 138 ¶¶ 37, 58, 77, 92, 118, 147, 160, 185, 229, 239. The only Plaintiff that had a valid visa was M.R. Souza, who had an F-2 visa based on his wife's status as a foreign student studying in the United States. D. 138 ¶ 252. M.R. Souza, however, could not meet the requirements to lease an apartment at Granada because, as is undisputed, he did not have a SSN or ITIN to produce as also required under the Rental Policy. D. 138 ¶ 253; D. 13-40 at 9, 13. Accordingly, none of the Plaintiffs were "qualified for the housing opportunity in question," Pham v. Deutsche Bank Trust Co. Americas, 2019 WL 2340957, at *3 (D. Mass. June 3, 2019) (granting summary judgment for Defendant on FHA claim where there was "simply no evidence that [plaintiffs] were eligible for a 'housing opportunity'"); D. 131 at 20 and cases cited, and, therefore, have failed to satisfy this second element of their prima facie case. Based upon Plaintiffs' inability to satisfy the second element of the McDonnell Douglas framework because they do not meet the requirements of the Rental Policy, they are also unable to satisfy the third element, which requires that a showing that Plaintiffs who were otherwise qualified to lease were denied initial leases or renewals. See McDonnell Douglas Corp., 411 U.S. at 802-03.

Plaintiffs also have not satisfied the fourth element, which requires that Plaintiffs show that Defendants approved renewal or lease applications for similarly situated non-Brazilian tenants. See McDonnell Douglas, 411 U.S. at 802-03; Pina, 529 F. Supp. 2d at 157. Each Plaintiffs concede that they are unaware of what requirements any other tenants, including foreign citizen tenants from countries besides Brazil, were required to fulfill to renew a lease or apply for a lease. See D. 138 ¶¶ 55, 73, 104, 139, 156, 180, 207, 233, 250, 264. The only evidence Plaintiffs have

12

provided to show discrimination based upon Brazilian national origin is affidavits of two former Granada employees. See D. 137-13 (redacted), D. 143-1 (unredacted), 137-14. Although the Court declines to strike them as Defendants seek, D. 140, neither of the affidavits provide specific, admissible evidence that qualified non-Brazilian tenants were subject to less stringent requirements for leasing units at Granada. See D. 134-2–134-18. That is, Plaintiffs have failed to "bear[ ] the burden of showing that the individuals with whom he seeks to be compared have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the [Defendants'] treatment of them for it." Rodriguez-Cuervos v. Wal-Mart Stores, Inc., 181 F.3d 15, 21 (1st Cir. 1999) (internal quotation marks and citation omitted).

Because Plaintiffs are unable to establish a prima facie case of national origin discrimination, it is unnecessary to discuss the burden-shifting analysis articulated in McDonnell Douglas in which, had Plaintiffs made out a prima facie case, Defendants would be required to articulate a legitimate and non-discriminatory reason for denying Plaintiffs' renewal or lease applications and Plaintiffs would then be required to show that such reasons provided by Defendants were pretextual. See Pina, 529 F. Supp. 2d at 156; McDonnell Douglas Corp., 411 U.S. at 802-03.

### 2. *Plaintiffs Have Failed Otherwise to Raise a Material Issue of Fact*

In their opposition, Plaintiffs contend that they have "direct evidence of discriminatory intent," D. 137 at 6, and, therefore, have raised a material issue of fact defeating Defendants' motion for summary judgment. In support of this position, Plaintiffs rely upon two, aforementioned affidavits of former employees of Granada that they claim show direct evidence of discriminatory intent by Granada and its employees against Brazilian nationals. D. 137-13; D.

137-14; D. 137 at 6-7. Defendants dispute that these affidavits are sufficient to defeat summary judgment, arguing that they contain only "conclusory statements of opinion" and that affiants lack personal knowledge of the facts relevant to Plaintiffs' claims. See D. 141 at 2-5. Further, Defendants argue that the affiants do not include any evidence regarding Defendants' denial of leases to any of the Plaintiffs. See D. 141 at 2-5.

To be admissible, an affidavit must "be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Perez v. Volvo Car Corp., 247 F.3d 303, 315 (1st Cir. 2001) (quoting Fed. R. Civ. P. 56(e)). Further, affidavits must be factual rather than conclusory. See id. "Without any specific factual knowledge to support [a] statement [in an affidavit], it is a mere conclusion that cannot serve as probative evidence." Reynolds v. Steward St. Elizabeth's Med. Ctr. of Boston, Inc., 364 F. Supp. 3d 37, 57 (D. Mass. 2019) (internal quotation marks and citation omitted). Here, both affidavits include statements of opinion and conclusory statements that are unsupported by specific, admissible facts. See D. 143-1 (e.g., asserting that "the company" broke a "laundry list of fair housing laws"); D. 137-14 (describing affiant's perception of discrimination by management, but not giving specific, factual information about same).

Even assuming the affidavits relied upon by Plaintiffs were sufficient, neither provides the critical link indicating that Plaintiffs were denied leases "because of" their national origin as required under the FHA. See 42 U.S.C. § 3604(b) (barring discrimination against any person "because of . . . national origin"); see Batista, 776 F.3d at 44 (denying an FHA claim where "[Plaintiff] . . . put forward no evidence . . . to suggest that an impermissible, . . . discriminatory purpose motivated the [housing cooperative's] actions"). Neither affidavit references any of the Plaintiffs or Granada's actions denying Plaintiffs' leases or renewal of leases. See D. 143-1; D.

14

137-14. Further, besides stating that they worked for Granada in 2015 to 2018 and 2017-2018, respectively, D. 143-1 at 1; D. 137-14 at 2, neither affidavit includes any temporal reference indicating the events they describe in relation to such denials of leases or lease renewals as to the Plaintiffs. For all of these reasons, Plaintiffs have failed to meet their burden to show that there is a genuine dispute as to a material fact. Accordingly, the Court grants summary judgment in favor of Defendants as to Count I.

### B. Other Pending Motions

Defendants have also moved to sever Plaintiffs' claims, D. 117, and moved to strike parts of Plaintiffs' submission in opposition to the motion for summary judgment, including the affidavits of former employees of Granada, D. 140. Given the Court's ruling on the summary judgment motion, the Courts DENIES D. 117 and D. 140 as moot.

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS Defendants' motion for summary judgment as to Count I, D. 130, and DENIES D. 117 and D. 140 as moot.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge